**Joseph Ralph WARREN, Plaintiff and Appellant,**

v.

**John MELVILLE, Defendant and Appellee.**

No. 960361–CA.

Court of Appeals of Utah.

April 24, 1997.

Gary W. Pendleton, St. George, for Plaintiff and Appellant.

R. Phil Ivie and David N. Mortensen, Provo, for Defendant and Appellee.

Before DAVIS, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Appellant, Joseph Ralph Warren, appeals the trial court's grant of summary judgment in favor of John Melville, dismissing Warren's claim on the grounds that it failed to satisfy the general damage threshold requirement of Utah Code Ann. § 31A–22–309(1) (1994) (Utah's no-fault statute). Warren asserts that Utah's no-fault statute violates the open courts provision and the uniform operation and due process of law clauses of the Utah Constitution. We affirm.

## BACKGROUND

The facts of this case are undisputed. In the course of his employment, Warren was injured when Melville's automobile struck Warren's automobile. An ambulance transported Warren to Dixie Regional Medical Center, where he was treated.

■ As a consequence of his injuries, Warren missed seven days of work and participated in physical therapy for over four months. Warren's medical expenses, totaling $2583.56, were paid by his employer's workers' compensation insurance carrier. Additionally, the carrier paid Warren $152.15 in compensation for part of his $810.51 in lost earnings.[1]

Warren sued Melville for general damages. Utah's no-fault statute establishes threshold requirements which a plaintiff must satisfy before bringing a cause of action for general damages. Section 31A–22–309(1) provides:

A person who has or is required to have direct benefit coverage under a policy which includes personal injury protection may not maintain a cause of action for general damages arising out of personal injuries alleged to have been caused by an automobile accident, except where the person has sustained one or more of the following:

(a) death;

(b) dismemberment;

(c) permanent disability or permanent impairment based upon objective findings;

(d) permanent disfigurement; or

(e) medical expenses to a person in excess of $3,000.

Utah Code Ann. § 31A–22–309(1) (1994). Warren admitted that his medical expenses would not exceed $3000, and he alleged no dismemberment, disfigurement, or permanent disability. Warren did, however, argue that Utah's no-fault statute violated sections 7, 11, and 24 of article I of the Utah Constitution. Warren moved for partial summary judgment and Melville filed a cross-motion for summary judgment asserting that Warren failed to state a claim for which relief could be granted. The trial court granted Melville's motion for summary judgment and denied Warren's motion for partial summary judgment. Warren then appealed.

## ISSUE ON APPEAL

The sole issue before us is whether the threshold requirements of Utah's no-fault statute violate any of the following provisions of the Utah Constitution: the Due Process Clause of article I, section 7; the Open Courts Provision of article I, section 11; or the Uniform Operation of Laws Clause of article I, section 24.

■ The issue of whether a statute is constitutional presents a question of law, with no deference given to the trial court. *See State v. Mohi*, 901 P.2d 991, 995 (Utah 1995). A statute, however, carries a strong presumption of constitutionality, with doubts resolved in favor of its constitutionality. *See id.; State v. Bell*, 785 P.2d 390, 397–98 (Utah 1989) (plurality opinion).

## ANALYSIS

### Open Courts Provision

■ Utah's no-fault insurance statute provides first party compensation, thereby en-

---

1. Appellee correctly notes that appellant has not applied for the additional lost wages under his no-fault policy. Recovery of such wages, which are special damages, is not barred under Utah's no-fault statute; rather, section 31A–22–309(1) merely places a threshold requirement on an action for general damages. *See* Utah Code Ann. § 31A–22–309(1) (1994). Appellant has not asserted the issue of lost wages on appeal.

abling an injured party to expeditiously obtain recompense for financial needs, without bearing the expense and lengthy delay associated with litigation to establish fault. In return for the disallowance of general damages ("all damages other than those awarded for economic losses"[2]), a tort victim is given immediate payment of medical expenses and lost wages. The Utah no-fault insurance law has no effect on a tort victim's ability to completely recover pecuniary losses.

■ Warren asserts that Utah's no-fault statute violates the state constitution's open courts provision because it abrogates a cause of action without providing a substitute remedy, and it does not eliminate a clear social or economic evil. Article I, section 11 of the Utah Constitution provides that:

> All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

Utah Const. art. I, § 11. Although no Utah appellate court has analyzed Utah's no-fault statute under the open courts provision, appellate courts have examined statutes of repose and limitations under section 11. *See Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1088–89 (Utah 1989); *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985); *Currier v. Holden*, 862 P.2d 1357, 1360–61 (Utah.Ct.App.1993), *cert. denied*, 870 P.2d 957 (Utah 1994). Nevertheless, section 11 has a potentially broad application and thus, is not limited to invalidating statutes of repose or limitations. *See Currier*, 862 P.2d at 1361. As this court noted in *Currier:* "The

open courts provision is not primarily concerned with particular, identifiable causes of action, but rather with the availability of legal remedies to vindicate individuals' interest 'in the integrity of their persons, property, and reputations.'" *Id.* (quoting *Berry*, 717 P.2d at 677 n. 4).

Accordingly, we review Utah's no-fault statute under the open courts provision and apply the analytical framework developed by the supreme court in *Berry* to determine its constitutionality. The *Berry* court formulated a two-part analysis:

> First, section 11 is satisfied if the law provides an injured person an effective and reasonable alternative remedy ... for vindication of his constitutional interest. The benefit provided by the substitute must be substantially equal in value or other benefit to the remedy abrogated in providing essentially comparable substantive protection to one's person ... although the form of the substitute remedy may be different.
>
> ....
>
> Second, if there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective.

*Berry*, 717 P.2d at 680; *accord Currier*, 862 P.2d at 1362. The *Berry* court further noted that the open courts provision and the due process clause of article I, section 7 are related "and even overlap, but they are not wholly duplicative." *Berry*, 717 P.2d at 675. Nevertheless, in analyzing a statute under article I, section 11 of the Utah Constitution, we employ a due process-type balancing analysis. *See id.* at 683.[3]

---

**2.** *Allstate Ins. Co. v. Ivie*, 606 P.2d 1197, 1201 (Utah 1980) (quotation marks & citation omitted).

**3.** While appellant challenges Utah's no-fault statute under both the open courts provision and the due process clause, both parties in their briefs analyze the statute under the open courts provision only. Appellant concedes that if Utah's no-fault statute "provides a substitute remedy which is 'substantially equal in value or other benefit' to the remedy which is abrogated thereby, the legis-

lation will not be subject to further review on a 'due process' level." The Utah cases holding statutes unconstitutional under the open courts provision have applied a similar analysis and have not separately addressed the due process clause. *See Berry*, 717 P.2d at 675–76. Accordingly, because we conclude that Utah's no-fault statute provides an adequate substitute remedy, we conclude that it also survives a due process challenge. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

Utah's no-fault statute does not abrogate all remedies for general damages[4] as proscribed by *Berry.* *See id.* at 680. Instead, the statute only bars a cause of action for general damages if the plaintiff fails to meet the threshold requirements. In analyzing the statute's constitutionality, we must consider the Legislature's purpose in light of its prerogative "to cope with widespread social or economic evils." *Id.* "[S]ection 11 does not recede before every legislative enactment, but neither may it be applied in a mechanical fashion to strike every statute with which there may be a conflict." *Id.*[5] For the reasons explained below, we hold that Utah's no-fault statute is constitutional under both prongs of *Berry* 's two-part analysis.

*Reasonable Alternative Remedy*

Warren argues that Utah's no-fault statute fails to provide an adequate substitute remedy for the general damages remedy abolished by section 31A–22–309(1) of the Utah Code because personal injury protection benefits are not a remedy. Warren asserts that personal injury protection benefits are merely "social" legislation paid for by individuals who own registered vehicles. Thus, personal injury protection coverage is not a substitute remedy because it replaces the common law personal cause of action with money and insurance contracts. Warren contends that this is inadequate because it denies "a forum for public expression of one's anger, outrage, or grief [which] is as important an aspect of a civil proceeding as is the recovery of monetary compensation." Finally, Warren argues that the remedy provided by Utah's no-fault statute fails to compensate general damages below the $3000 threshold and thus, does not provide substantive protection similar to the common law right abrogated.

Nonetheless, we believe Utah's no-fault statute provides a reasonable alternative remedy for persons who sustain general damages in automobile accidents. Like a number of other state courts, we recognize that under the open courts provision, a reasonable alternative remedy is required, but this does not amount to an exact equation of remedies. *See Berry,* 717 P.2d at 680 (holding "benefit provided by the substitute must be *substantially equal* in value or other benefit" (emphasis added)); *see also Gentile v. Altermatt,* 169 Conn. 267, 363 A.2d 1, 15 (1975) (recognizing no-fault statute "is a legislative realization that minor injury cases ... involve little in the way of non-economic detriment and that the injured party is better compensated by immediate payment of ... benefits."); *Lasky v. State Farm Ins. Co.,* 296 So.2d 9, 15 (Fla.1974) (holding no-fault statute provided reasonable alternative under open courts provision because "injured party is assured a speedy payment of his [or her] medical bills and compensation for lost income from his [or her] own insurer, even where the injured party was [ ] clearly at fault."); *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291, 1301 (1974) ("To the extent there is a limitation on a person's ability to recover non-pecuniary damages, the rights received in exchange [prompt, efficient payments of certain economic losses] are no less adequate."); *Pinnick v. Cleary,* 360 Mass. 1, 271 N.E.2d 592, 600 (1971) (holding no-fault statute does not affect automobile accident victim's fundamental right in cause of action). The Connecticut Supreme Court in *Gentile* noted,

for each remedy or item of damage existing under the prior fault system, it is not required that that item be duplicated under the act but that the bulk of remedies under the act be of such significance that a

---

4. Utah's no-fault statute does not define the term "general damages." In *Allstate Insurance Co. v. Ivie,* 606 P.2d 1197, 1200–01 (Utah 1980), the court explained that the term general damages " 'includes damages for pain and suffering' " and it may also include " 'all damages other than those awarded for economic losses ... (including for example, disability to play golf).' " *Id.* (quoting Robert E. Keeton, *Compensation Systems & Utah's No-Fault Statute,* 1973 Utah L.Rev. 383, 392).

5. Chief Justice Zimmerman asserts that under section 11, the State must justify a limitation on the right to a remedy in state courts. *See Horton,* 785 P.2d at 1096 (Zimmerman, J., concurring); *Condemarin v. University Hosp.,* 775 P.2d 348, 368 (Utah 1989) (Zimmerman, J., concurring in part).

court is justified in viewing this legislation on the whole as a substitute, the benefits from which are sufficient to tolerate the removal of the prior cause of action.... It is this *aggregate of benefits* to the insured that clearly falls within the ambit of reasonable alternative.

*Gentile,* 363 A.2d at 15 (emphasis added). This reasoning is consistent with the *Berry* court's analysis of our state's open courts provision in which the court recognized that in providing a reasonable alternative, "[t]he term 'due course of law' may permit nonjudicial type remedies in lieu of judicial remedies as long as other constitutional provisions are not violated and the remedy provided is reasonable and equitable." *Berry,* 717 P.2d at 675 n. 1.

Further, requiring reasonable alternative remedies in the aggregate comports with the Utah Supreme Court's review of the Workers' Compensation Act.[6] In *Masich v. United States Smelting, Refining & Mining Co.,* 113 Utah 101, 191 P.2d 612 (1948), the court held the Workers' Compensation Act constitutional under the open courts provision. *Id.* 191 P.2d at 624. Like Utah's no-fault statute, the Workers' Compensation Act disregards the issue of fault in lieu of prompt, efficient payment of benefits to beneficiaries for certain losses. The *Masich* court recognized that the main purpose of the Workers' Compensation Act "is to assess the costs of injury and disease against the industry" and to provide for the employee's welfare. *Id.* The *Masich* court noted that because the Legislature could deny employers the defenses of contributory negligence or assumption of the risk, and make the employer absolutely liable irrespective of fault, "it also has the right to say that compensation shall not be awarded until the employee has brought himself [or herself] within the terms of the statute." *Id.* 191 P.2d at 625. Similarly, because Utah's no-fault statute provides benefits irrespective of fault, the Legislature has the authority to condition a plaintiff's cause of action for general damages on the plaintiff meeting the threshold requirements. *See* Utah Code Ann. § 31A–22–309 (1994).

Like the *Masich* court, we determine that Utah's no-fault statute "should not be discarded because some members of the class have rights, which may be adversely affected." *Masich,* 191 P.2d at 624. Just as the Legislature under its police power "has the right to require industry to make compensation for damage which the industry itself causes," it also has the right to require those who use motor vehicles upon Utah roads and those who are injured by operation of motor vehicles on these roads to be subject to Utah's no-fault statute. *Id.*

We further conclude that in the aggregate, Utah's no-fault statute provides individuals damaged in an automobile accident a reasonable alternative remedy because it (1) provides for recouping pecuniary losses by mandating recovery of all special damages, and (2) places a reasonable dollar limit on the general damage monetary threshold, to accomplish the statute's objectives.

First, Utah's no-fault statute does not affect a tort victim's ability to completely recover his or her pecuniary losses. As Chief Justice Zimmerman noted in *Condemarin,*

> when the people are deprived of a right to recover actual out-of-pocket expenditures that have been or will be incurred because of the tortious conduct of another, the infringement upon the right to recover for harm to the person is far more severe and requires far more justification than when general damages for pain and suffering or punitive damages are restricted.

*Condemarin v. University Hosp.,* 775 P.2d 348, 369 (Utah 1989) (Zimmerman, J., concurring in part). Further, Utah's no-fault statute does not suffer from the same constitutional infirmities as the medical malpractice statute of repose at issue in *Condemarin. See Condemarin,* 775 P.2d at 364. The statute does not interfere with a tort victim's ability to collect out-of-pocket expenditures; rather, it merely limits the ability to recover damages for pain and suffering. *See* Utah Code Ann. § 31A–22–309 (1994). Additionally, Utah's no-fault statute does not limit a plaintiff's ability to recover for special damages, i.e., lost wages. *See id.*

---

6. Utah Code Ann. §§ 35A–3–101 to 10–108    (Supp.1996).

Second, the general damage threshold requirements are reasonable to achieve the objective of Utah's no-fault statute. A primary objective of the statute is to create a more efficient and equitable method for handling the bulk of personal injury claims in a cost effective manner.[7] Utah's no-fault statute provides general damages for any permanent injury or death, but creates a $3000 threshold before allowing people to bring suit. *See id.* If this threshold is too low, it will not accomplish the statute's objectives. *See* 12A Mark S. Rhodes, Couch on Insurance 2d § 45:667, at 271 (rev. ed.1981) (explaining "no-fault plans are designed to limit the number of common law tort suits arising out of automobile accidents. The mechanism for determining which claims are serious enough to be the subject of litigation is the threshold."). It appears to us that Utah's monetary threshold is reasonable in light of the Legislature's goals.[8] Accordingly, we determine that in the aggregate Utah's no-fault statute provides an automobile accident victim with reasonable alternative remedies.

*Social or Economic Evils*

Warren asserts that not only does Utah's no-fault statute fail the first prong of the *Berry* analysis, it also fails the second prong because the statute fails to eliminate a "clear social or economic evil." *Berry,* 717 P.2d at 680. Warren criticizes the legislative purpose of Utah's no-fault statute for the following reasons: First, the hardship associated with the delay pending resolution of all disputed issues in an automobile accident warranted legislative concern, admits Warren, but these problems are not social or economic evils against which the Legislature could abrogate the common law remedy. Second, Warren asserts that the goal of lowering or at least stabilizing the cost of automobile insurance is not an "evil" which justifies abrogating a common law right to recover for

personal injury. Third, Warren argues the "social or economic evil" that Utah's no-fault statute addresses is a tort victim's constitutional right to have a remedy in the courts. Warren contends that the Utah Supreme Court has refused to abolish traditional causes of action simply because some litigants abuse these rights of action. *Cf. Nelson v. Jacobsen,* 669 P.2d 1207, 1216 (Utah 1983) (upholding cause of action for alienation of affections).

We disagree with these criticisms of Utah's no-fault statute's legislative purpose and instead conclude that the common law right abrogated by the statute is justified because a clear social or economic evil is eliminated. As a preliminary matter, it is notable that in discussing the open courts provision, the *Berry* court cited the "Utah No–Fault Automobile Insurance Act" as an example of a statute which provided an insurance remedy in lieu of a common law remedy. *See Berry,* 717 P.2d at 677. Further, as the *Masich* court explained in the context of the Workers' Compensation Act, "[t]he fact that under the [Workers' Compensation Act] certain of the employees are denied their common law right, and at the same time only given compensation conditioned upon reaching a stage of total disability, does not offend against the Constitution as certain individual rights and remedies can be made to yield to the public good." 191 P.2d at 624. This statement is equally applicable to Utah's no-fault statute. As the *Berry* court explained, an individual's section 11 interests "may, in some cases, have to yield to the power of the Legislature to promote the public health, safety, morals, and welfare." *Berry,* 717 P.2d at 677. We recognize that the Legislature has an interest in creating a more efficient process for liquidating personal injury claims[9] and providing an incentive for persons driving Utah's highways to obtain motor vehicle in-

---

7. "The intention of the legislature is hereby to possibly stabilize, if not effectuate certain savings in, the rising costs of automobile accident insurance and to effectuate a more efficient, equitable method of handling the greater bulk of the personal injury claims that arise out of automobile accidents, these being those not involving great amounts of damages." Automobile No–Fault Insurance Act, ch. 55, § 2, 1973 Utah Laws 141.

8. We also note that periodic increases in this dollar threshold may be necessary to retain the benefit of the threshold.

9. *See* Automobile No–Fault Insurance Act, ch. 55, § 2, 1973 Utah Laws 141 (quoted in *supra* note 7).

surance. *Cf. Allstate Ins. Co. v. Ivie,* 606 P.2d 1197, 1200 (Utah 1980) (stating that in coupling Utah's no-fault statute with the Motor Vehicle Financial Responsibility Act, "the obvious legislative intent was to encourage compliance with the security provisions of the act.").

Further, the rights adversely affected by Utah's no-fault statute are significantly less momentous than those affected by the portion of the Workers' Compensation Act at issue in *Masich,* which authorized compensation only for those employees totally disabled or to dependents of those who died as the result of an occupational disease. *See Masich,* 191 P.2d at 614–15. In contrast, Utah's no-fault statute merely creates a statutory threshold which a plaintiff must satisfy to sue for general damages incurred in an automobile accident. As such, section 31A–22–309 limits a plaintiff's cause of action for general damages only when medical costs are less than $3000, rather than limiting claims for general damages to cases where total disability or death occurs. *Cf. id.* at 624. We conclude that Utah's no-fault statute eliminates a clear social or economic evil by nonarbitrary or reasonable means, and thus it withstands scrutiny under article I, section 11 of the Utah Constitution.

### Uniform Operation of Laws

■ Warren also asserts that Utah's no-fault statute violates the state constitution's uniform operation of laws provision. Article I, section 24 of the Utah Constitution provides: "All laws of a general nature shall have uniform operation." Under this provision, we review a statute under the rational basis standard unless the statute discriminates against a constitutionally protected right in its operation. *See Lee v. Gaufin,* 867 P.2d 572, 582–83 (Utah 1993). Because we have determined the substitute remedy provided by Utah's no-fault statute is "substantially equal in value or other benefit" to the remedy abrogated, we need only apply a rational basis review. In applying rational basis review, we consider: "First, a law must apply equally to all persons within a class. Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute." *Malan v. Lewis,* 693 P.2d 661, 670 (Utah 1984) (citations omitted).

■ We determine that Utah's no-fault statute does not result in the types of discrimination addressed by article I, section 24. First, the statute makes a reasonable classification between serious and less serious injuries, namely those that involve a permanent injury or monetary damages in excess of $3000 and those that do not involve a permanent injury and damages less than $3000. All individuals falling within these classifications are treated similarly.

Second, these classifications reasonably further the legislative objective of Utah's no-fault statute. As previously discussed, in enacting the statute, the Legislature was primarily concerned with creating a more efficient and equitable method for handling less serious personal injuries. *See* Utah Automobile No-Fault Insurance Act, ch. 55, § 2, 1973 Utah Laws 141. We believe that this is a valid legislative objective reasonably achieved by the statutory classifications. By dividing plaintiffs into classifications based on the seriousness of their injury, the statute enables injured persons to obtain relief for out-of-pocket damages on an expedited basis. We conclude that there is unquestionably a rational basis for Utah's no-fault statute's distinction between serious and less serious injuries and thus, it does not violate article I, section 24 of the Utah Constitution.

### CONCLUSION

Utah's no-fault statute satisfies article I, section 11 of the Utah Constitution because it not only provides a tort victim with a reasonable and alternative remedy, but it also eliminates a clear social or economic evil. Further, Utah's no-fault statute does not violate the state constitution's uniform operation of

laws provision because it makes a reasonable classification between serious and less serious injuries and applies equally to all individuals within such classification, and the classifications reasonably further the Legislature's goals. Accordingly, we affirm the trial court's grant of summary judgment in favor of Melville.

DAVIS, P.J., and ORME, J., concur.